**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSE MAINOR ALEXANDER SANCHEZ
CRUZ,

    Plaintiff,

v.

                                  Case No. 25-cv-13347
                                  HON. MARK A. GOLDSMITH

MARKWAYNE MULLIN, Secretary of the
U.S. Department of Homeland Security,
et al.,

    Defendants.

_____/

**OPINION & ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION (Dkt. 7)**

This matter is before the Court on Plaintiff Jose Mainor Alexander Sanchez Cruz's motion

for a preliminary injunction (Dkt. 7), which seeks an order requiring Defendants to facilitate his

return to this country following his removal.[1]  Defendants do not contest that the removal order

that was enforced against Sanchez Cruz had been stayed, and that had the Government followed

its own regulations it should not have removed him.  For the reasons set forth in detail below, the

Court grants the motion.[2]

---

[1] The Defendants include: Markwayne Mullin, Secretary of the U.S. Department of Homeland
Security; Todd Lyons, Acting Director, U.S. Immigration and Customs Enforcement; Kenneth
Genalo, Acting Executive Associate Director, ICE Enforcement and Removal Operations; Robert
Lynch, ICE Detroit Field Office Director; and Todd Blanche, Acting Attorney General.

[2] The Court held hearings on the motion on December 9, 2025; January 6, 2026; and April 15,
2026.  The briefing includes: Defendants' response to the motion for preliminary injunction (Dkt.
13); Sanchez Cruz's reply brief (Dkt. 14); Sanchez Cruz's first supplemental brief (Dkt. 15);
Defendants' first supplemental brief (Dkt. 16); Defendants' second supplemental brief (Dkt. 21);
Sanchez Cruz's second supplemental brief (Dkt. 22).

## I. BACKGROUND

Sanchez Cruz is a native and citizen of Honduras.  Sanchez Cruz Decl. ¶ 1 (Dkt. 1-2).  He entered the United States without inspection in October 2021 near Hidalgo, Texas.  Hughley Decl. ¶ 5 (Dkt. 13-2).  The Department of Homeland Security served him with a notice to appear, charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i).  Notice to Appear (Dkt. 1-3).  Sanchez Cruz was placed in removal proceedings in the immigration court in Los Angeles.  Hughley Decl. ¶ 6.  After Sanchez Cruz did not appear at two hearings, the immigration judge ordered him removed in absentia.  IJ Order (Dkt. 1-4); Hughley Decl. ¶¶ 8–9.  In February 2025, Sanchez Cruz traveled from California to Detroit.  Sanchez Cruz Decl. ¶ 5.  On July 2, 2025, agents of Immigration and Customs Enforcement (ICE) encountered him in St. Clair Shores, Michigan, and arrested him pursuant to the outstanding in-absentia removal order.  Answer ¶ 2 (Dkt. 17); Hughley Decl. ¶ 11.

On July 14, 2025, his counsel emailed the ICE Detroit Field Office advising it that counsel intended to move to reopen.  Counsel's Email (Dkt. 1-6); Answer ¶ 21.  The email received only an automated reply.  On July 17, 2025, Sanchez Cruz filed a motion to reopen in the immigration court proceedings in Los Angeles, based on non-receipt of the hearing notices.  Mot. to Reopen (Dkt. 1-5); Answer ¶ 19.  The motion invoked 8 U.S.C. § 1229a(b)(5)(C)(ii), which permits rescission of an in-absentia order "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."  8 U.S.C. § 1229a(b)(5)(C)(ii).  The filing of that motion triggered an automatic stay of removal under 8 U.S.C. § 1229a(b)(5)(C) and 8 C.F.R. § 1003.23(b)(4)(ii).[3]

---

[3] "The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge."  8 U.S.C. § 1229a(b)(5)(C).

On July 19, 2025, ICE transferred Sanchez Cruz from Michigan to Louisiana. Answer ¶ 22. Two days later, on July 21, 2025, ICE removed him to Honduras. Answer ¶ 23.

Defendants concede that "ICE officials performed a records check, but for reasons that are not clear at this time, they were not aware of Sanchez Cruz's motion to reopen when they scheduled and executed his removal." Resp. at 3. Defendants have not, at any stage of this litigation, contested that the removal violated the automatic stay.

On August 11, 2025, the immigration judge granted the motion to reopen. IJ Reopening Order (Dkt. 1-8). That same day, the immigration court issued a notice of hearing setting a master calendar hearing. Notice of Hearing (Dkt. 13-3). On September 25, 2025, counsel for Sanchez Cruz emailed ICE requesting that the agency facilitate his return. Return Request (Dkt. 1-9). ICE declined. Id.

Sanchez Cruz filed this action on October 21, 2025. Compl. (Dkt. 1). The complaint asserts claims under the Administrative Procedure Act (APA), the Accardi[4] doctrine, and the Due Process Clause of the Fifth Amendment, and seeks an order requiring Defendants to facilitate his return to the United States. Id. at 8–10. The complaint alleges that Sanchez Cruz's removal violated his rights because it was illegal, as it was done pursuant to a stayed order, the effect of which was to eliminate Sanchez Cruz's statutory eligibility to file for asylum in the reopened proceedings and freeze his case at the master calendar stage. Id. Sanchez Cruz filed the present motion for a preliminary injunction on November 12, 2025.

---

"The filing of a motion under this paragraph (b)(4)(ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 C.F.R. § 1003.23(b)(4)(ii).

[4] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

The Court ordered the parties to file a joint status report following Sanchez Cruz's next master calendar hearing in the immigration court, and to advise specifically whether the immigration judge would accept the filing of an I-589 Application for Asylum while Sanchez Cruz remained physically outside the United States.  The parties filed a joint status report on January 21, 2026 (Dkt. 19), which stated that Sanchez Cruz had appeared at his January 15, 2026 master calendar hearing by WebEx from Tijuana, Mexico, and that he intended to file with the immigration court a Form I-589 (entitled Application for Asylum and for Withholding of Removal).

Thereafter, Sanchez Cruz filed with the immigration court a Motion to Accept Filing of I-589, together with an executed I-589 application.  See Joint Status Rep. ¶ 3 (Dkt. 20).  On March 4, 2026, the immigration judge denied the motion.  IJ March 4 Order (Dkt. 20-1).  The order set forth a single basis for denial—Sanchez Cruz was not physically in the country—citing INA § 208(a)(1)(A), 8 U.S.C. § 1158(a)(1)(A) ("Any alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum.").  The parties reported the denial to this Court in their second joint status report, filed March 14, 2026, which attached the immigration judge's order as an exhibit.  Joint Status Rep. (Dkt. 20); IJ March 4 Order.

Sanchez Cruz remains in Tijuana, Mexico.  Joint Status Rep. ¶ 2 (Dkt. 19).  A further master calendar hearing in the Los Angeles immigration court is set for June 18, 2026.  EOIR Case Status (Dkt. 21-1).

## II. ANALYSIS

A preliminary injunction is an "extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002).  The movant must

establish four factors: (i) a likelihood of success on the merits; (ii) a likelihood of irreparable harm absent preliminary relief; (iii) that the balance of equities tips in his favor; and (iv) that an injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); McPherson v. Mich. High Sch. Athletic Ass'n, 119 F.3d 453, 459 (6th Cir. 1997).  The four factors are balanced, though "the existence of an irreparable injury is mandatory."  EOG Res., Inc. v. Lucky Land Mgmt., LLC, 134 F.4th 868, 883 (6th Cir. 2025) (punctuation modified).

As a threshold issue, Defendants challenge jurisdiction.  That issue is addressed first, followed by consideration of the injunction factors.

### A. Jurisdiction

Defendants argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction.  Resp. at 14–15. That provision states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).

Section 1252(g) is not as broad as Defendants contend.  The Sixth Circuit has held that the provision reaches challenges to "existing and enforceable removal orders subject to execution," in other words, "executable removal orders."  Enriquez-Perdomo v. Newman, 54 F.4th 855, 863–864 (6th Cir. 2022) (emphasis in original).  In Enriquez-Perdomo, the Department of Homeland Security had granted the plaintiff a deferred removal status under an immigration-relief program called Deferred Action for Childhood Arrivals (DACA).  Nonetheless, the plaintiff was arrested and detained because a final order of removal had been previously issued.  When the plaintiff sued the individuals involved in her detention for money damages, she was met with a jurisdictional

challenge under § 1252(g).  Reviewing the text of the statute, the Sixth Circuit agreed that there

was no jurisdictional bar:

> Considering the term "removal orders" in § 1252(g) in context alongside the preceding word "execute," we read "removal orders" as referring to <u>executable</u> removal orders—that is, existing and enforceable removal orders subject to execution.  But Enriquez-Perdomo's removal order was not subject to execution because she had DACA status when Defendants arrested and detained her…
> Although the government was free to terminate that relief, it did not, and Enriquez-Perdomo's arrest and detention despite that relief were unauthorized.  Accordingly, § 1252(g) does not preclude Enriquez-Perdomo's claims because her removal order was not executable.

<u>Id.</u> at 863 (emphasis in original).

The same logic controls here.  The filing of a motion to reopen under § 1229a(b)(5)(C)

triggers an automatic stay that, by force of statute and regulation, suspends the legal force of the

underlying order.  8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii).  Just as DACA

rendered Enriquez-Perdomo's order unenforceable, the automatic stay rendered Sanchez Cruz's

order unenforceable on the day he was removed.  Because there was no executable order, § 1252(g)

does not apply, so there was no withdrawal of jurisdiction.

Sanchez Cruz does not seek to prevent the Attorney General from executing an

"executable" order.  He challenges ICE's decision to remove him while a statutory stay was in

force, at a moment when the order could not lawfully be executed.  The filing of the motion to

reopen suspended the legal force of the order by operation of § 1229a(b)(5)(C).  There was no

withdrawal of jurisdiction because the "decision or action" removing Sanchez Cruz was done

without an executable order.

Defendants cite <u>Hamama v. Adducci</u>, 912 F.3d 869 (6th Cir. 2018), for the proposition that

§ 1252(g) precludes "federal district courts from entering orders affecting a noncitizen's removal."

Resp. at 9.  This mischaracterizes the case.  <u>Hamama</u> addressed a petition for habeas relief in a

6

class-wide challenge that asked a district court to stay the removal of noncitizens with final orders. See id. at 874–880.  The removal orders had not been stayed, and both the district court and the court of appeals agreed that § 1252(g) deprived the district court of jurisdiction under the statute. Where those courts diverged was over the application of the Constitution's Suspension Clause, with the court of appeals concluding that § 1252(g) did not violate that Clause.  Thus, Hamama had nothing to do with whether a stayed order allowed a district court to exercise jurisdiction.

The Court has not been divested of subject matter jurisdiction.

**B. Likelihood of Success on the Merits**

Sanchez Cruz brings four claims: (i) his removal on July 21, 2025 violated 8 U.S.C. § 1229a(b)(5)(C) and 8 C.F.R. § 1003.23(b)(4)(ii); (ii) the agency violated its own regulations; (iii) his procedural due process rights were violated; and (iv) Defendants violated the APA.  As explained below, Sanchez Cruz has shown a likelihood of succeeding on all  his claims.

**1. Violation of the Automatic Stay of Removal**

Section 1229a(b)(5)(C) permits rescission of an in-absentia order upon a motion to reopen filed "at any time" where the noncitizen did not receive statutorily required notice.  8 U.S.C. § 1229a(b)(5)(C)(ii).  The same statute states that the filing of the motion to reopen "shall stay removal of the alien pending disposition of the motion by the immigration judge."   The implementing regulation repeats this language.  8 C.F.R. § 1003.23(b)(4)(ii).   The stay is automatic.  It operates by force of statute and regulation from the moment of filing; no agency approval is required.

The record establishes each element.  Sanchez Cruz's motion invoked the non-receipt ground under § 1229a(b)(5)(C)(ii).  Mot. to Reopen at 2.  He filed the motion on July 17, 2025, and ICE removed him four days later.  Answer ¶¶ 19, 23.  The immigration judge then granted the

motion.  IJ Reopening Order (Dkt. 1-8).  The Government has conceded the controlling facts: "The filing of the motion to reopen resulted in a temporary stay of removal," and ICE officials "were not aware of Sanchez Cruz's motion to reopen when they scheduled and executed his removal." Resp. at 3.  Defendants also acknowledge that they "have never contested the illegality of his removal."  Joint Status Rep. ¶ 5.

Sanchez Cruz is likely to succeed on his claim that his removal on July 21, 2025 violated 8 U.S.C. § 1229a(b)(5)(C) and 8 C.F.R. § 1003.23(b)(4)(ii).

### 2. Violation of an Agency's Own Regulations

The second claim is independent of the first but leads to the same result.  An agency's failure to comply with its own regulations, where that failure prejudices a party, is itself a basis for invalidating agency action.  Accardi, 347 U.S. at 266–267.

The regulation here, 8 C.F.R. § 1003.23(b)(4)(ii), is a mandatory protection for noncitizens in precisely Sanchez Cruz's position.  ICE's admitted failure to detect the pending motion to reopen, Resp. at 3, is a departure from the agency's obligation to honor its own regulatory stay. The prejudice is concrete: Sanchez Cruz was removed from this country and thereby deprived of the opportunity to proceed with his I-589 Asylum Application.

### 3. Violation of Procedural Due Process

The third claim is that the removal deprived Sanchez Cruz of procedural protections guaranteed by the Fifth Amendment.  Procedural due process requires weighing (i) the private interest at stake, (ii) the risk of erroneous deprivation through the procedures used and the probable value of additional procedural safeguards, and (iii) the Government's interest, including administrative burdens.  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The private interest is substantial.   Sanchez Cruz has a statutory right under § 1229a(b)(5)(C)(ii) to rescission of his in-absentia order on a showing of non-receipt of notice. He has a statutory right to apply for asylum if physically present in the United States.  8 U.S.C. § 1158(a)(1).   The automatic stay established by statute and regulation exists to protect those interests during the pendency of the motion.

Avoiding erroneous deprivation of legitimate interests is what the automatic stay regimen is reasonably calculated to prevent.  An automatic stay regimen assures that applicants can present applications that require their physical presence in the country.  Violating the automatic stay means that a perfectly valid application will be effectively rejected, thereby thwarting the congressional intent to allow consideration of such applications.

The Government's interest in removing noncitizens subject to final orders is legitimate.  It does not, however, extend to removing them during a window in which Congress and the agency have commanded that removal not occur.  Defendants have identified no administrative burden that would be incurred by honoring the automatic stay mandated by statute and regulation.

Sanchez Cruz is likely to succeed on his procedural due process claim.

**4. APA**

Sanchez Cruz is also likely to succeed on his APA claim.  His removal is subject to being set aside under 5 U.S.C. § 706(2)(A) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and under § 706(2)(D) as action "without observance of procedure required by law."

Defendants argue that the "prejudicial error" rule of § 706 defeats the claim because the record does not show that Sanchez Cruz would prevail on his asylum claim.  Resp. at 16 (citing Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 659 (2007)).  That argument

measures prejudice against the wrong standard.  The removal caused the very injury the stay was designed to prevent: it eliminated Sanchez Cruz's statutory eligibility to file for asylum in the reopened proceedings and froze his case at the master calendar stage.  Whether Sanchez Cruz will ultimately prevail in a future asylum adjudication is a question for the immigration court in the first instance; it does not bear on whether the stay violation prejudiced him.

### C. Irreparable Harm

The irreparable harm factor favors Sanchez Cruz.  When Sanchez Cruz filed his motion, he argued that his removal exposed him to gang threats in Honduras.  Mot. at 15–16.  Since the motion was filed, Sanchez Cruz has relocated to Tijuana, Mexico.  Joint Status Rep.  Defendants contend that this relocation moots the harm.  Resp. Supp. at 7 (Dkt. 21).  The Court agrees with Defendants that the Honduran gang-threat Sanchez Cruz alleged in his opening papers is attenuated by his relocation to Mexico.  But the loss of his right to present an asylum application is what drives the irreparable-harm analysis from this point forward.

The immigration judge's March 4, 2026 order places the core harm beyond dispute.  Asylum is available only to a noncitizen "physically present in the United States" or "who arrives in the United States."  8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.2(a)(1).  The immigration judge in the reopened proceedings has now held, relying on § 1158(a)(1), that Sanchez Cruz cannot file an I-589 while outside the United States.  IJ March 4 Order.  For his reopened proceedings to serve their statutory function, he must be returned.  The loss of the statutory opportunity to apply for asylum is not a harm compensable in damages.  The harm compounds each time a hearing in immigration court passes without a merits adjudication.

Defendants offer two responses.  First, they argue that Sanchez Cruz has not shown he would prevail on an asylum claim.  Resp. Supp. at 8.  However, the irreparable-harm inquiry does

not require the plaintiff to prove his asylum claim on the merits.  Sanchez Cruz's statutory right to present his claim for asylum is itself the protected right, of which he was deprived because he was unlawfully removed from the country.  Whether he ultimately succeeds is for the immigration court to decide after a full hearing, but the current harm is that Defendants have barred him from presenting his application.  Second, Defendants propose that Sanchez Cruz may seek refugee status abroad as a substitute.  Id. at 9.  However, the Immigration and Nationality Act, 8 U.S.C. §1101 et seq., distinguishes asylum from refugee admission, creating two different procedural paths.[5]  Even if Sanchez Cruz qualified for refugee status, he would face a slim chance of admission.  Under current executive allocations the refugee program is virtually only available to white South Africans.  See 90 Fed. Reg. 49,005 (2025) (FY 2026 refugee admissions cap).[6]  It is not a practical substitute for Sanchez Cruz.  An illusory procedural alternative is no alternative at all.

Sanchez Cruz has shown irreparable harm.[7]

**D. Balance of Equities and Public Interest**

The third and fourth preliminary injunction factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  On Sanchez Cruz's side of the ledger

---

[5] One critical difference is that a refugee must generally be outside their country of nationality, 8 U.S.C. § 1101(a)(42), which would have disqualified Sanchez Cruz, who was removed to Honduras, his country of nationality.  See Sanchez Cruz's First Supp. Br. at PageID.154.

[6] See also Ted Hesson, "Exclusive: Trump poised to expand refugee program for white South Africans," Reuters (April 23, 2026), available at https://perma.cc/DZ3U-W5EG ("The U.S. admitted about 4,500 South Africans as refugees through the first six months of the fiscal year, State Department figures show . . . . The only refugees other than white South Africans to enter this fiscal year were three Afghans, according to State Department statistics.").

[7] Defendants also argue that the loss of the opportunity to apply for asylum is a harm not initially alleged, which they say requires a new motion.  Defendants offer no authority for that proposition.  Plainly, Defendants have suffered no prejudice from Sanchez Cruz's delay in articulating this form of harm.  Defendants have had ample opportunity to address Sanchez Cruz's revised articulation of the harm he would suffer.  No new motion is required.

is the loss of a right to present an application for asylum.  On the Defendants' side is an injury that they have not  clearly articulated.  Nor have Defendants identified any diplomatic obstacle or resource constraint that would prevent facilitation of Sanchez Cruz's return.  ICE's own internal policy contemplates this process.  See ICE Policy Directive 11061.1 (Dkt. 13-4).

"There is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016).  That interest carries particular weight where, as here, Defendants do not contest that Government officers acted contrary to a statute designed to prevent the very harm Sanchez Cruz now suffers.  See Nken, 556 U.S. at 436.

The balance of equities and the public interest favor a preliminary injunction.

**E. Relief**

The remaining question is the form of preliminary relief.  The objective is to approximate, as nearly as practicable, the position Sanchez Cruz would have occupied had the unlawful removal not occurred.  See Nken, 556 U.S. at 429–430.

The Supreme Court has recognized that where a noncitizen has been removed in violation of law, a federal court may require the Government to "facilitate" the individual's return and to "ensure that his case is handled as it would have been had he not been improperly sent" elsewhere. Noem v. Abrego Garcia, 145 S. Ct. 1017, 1018 (2025) (per curiam).

That is precisely the relief Sanchez Cruz seeks.  Had ICE honored the automatic stay, Sanchez Cruz would be litigating his reopened proceedings from within the United States, with the full set of defenses and applications for relief that physical presence entails.  Facilitation restores that posture.  Facilitation is also not novel in immigration practice: ICE maintains a

standing Policy Directive establishing a process for facilitating the return of lawfully removed noncitizens in appropriate cases.  ICE Policy Directive 11061.1.

The mechanism of facilitation is straightforward and within the Government's existing authority.  Defendants must provide Sanchez Cruz with a travel document permitting his admission at a United States port of entry, or alternatively must issue a boarding letter sufficient to permit him to board a commercial flight to the United States.  Either option restores Sanchez Cruz to the physical jurisdiction of the immigration court without cost to the Government and without disrupting any valid Government function.

The relief is reasonably tailored.  The Government is not required to grant Sanchez Cruz any substantive immigration benefit.  And he will be in no superior position to the one he was in before he was unlawfully removed.

Finally, the Court finds that Sanchez Cruz is an indigent noncitizen unable to pay a preliminary injunction bond, and accordingly no bond is required.

### IV. CONCLUSION

For the reasons set forth above, Sanchez Cruz's motion for a preliminary injunction (Dkt. 7) is granted.

It is further ordered that, within fourteen days of the date of this Order, Defendants must facilitate the return of Plaintiff Jose Mainor Alexander Sanchez Cruz to the United States by one of the following means: (a) providing him with a travel document permitting his admission at a United States port of entry; or (b) providing him with a boarding letter sufficient to permit him to board a commercial flight to the United States.

It is further ordered that Defendants shall file a status report with the Court every seven days until Plaintiff's return is effectuated.

**SO ORDERED.**

Dated: May 12, 2026                                     s/Mark A. Goldsmith
Detroit, Michigan                                         MARK A. GOLDSMITH
                                                                   United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 12, 2026.

                                                  s/Joseph Heacox
                                                  JOSEPH HEACOX
                                                  Case Manager

14